X FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 2 4 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY________________ DEPUTY

REDACTED FOR PUBLIC DISCLOSURE

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

1. Huong Thi McReynolds, a.k.a. Huong Thi McReynold, a.k.a. Kelly McReynolds, (Counts 1-20)

2. Joseph Minh McReynolds, a.k.a. Joseph Vincent Girbaud, (Counts 1-2, 5-8)

3. Vincent Minh McReynolds, (Counts 1-2, 6-8)

4. James Kelber Hartful McReynolds, a.k.a. Jim McReynolds, (Count 5)

Defendants.

**No. CR 11-8133-PCT-GMS-DKD**

**SUPERSEDING INDICTMENT**

VIO: 18 U.S.C. §§ 371 and 1589
(Forced Labor Conspiracy)
Count 1

18 U.S.C. §§ 1589 and 2
(Forced Labor)
Count 2, 6-8

18 U.S.C. § 1592
(Unlawful Conduct With Respect To Documents In Furtherance Of Forced Labor)
Count 3

29 U.S.C. §§ 206, 215 and 216
(Violation Of Fair Labor Standards Act)
Count 4

18 U.S.C. § 371 and
8 U.S.C. § 1325(c)
(Marriage Fraud Conspiracy)
Count 5

18 U.S.C. § 1956(a)(1)(A)(I)
(Promotional Money Laundering)
Counts 9-20

18 U.S.C. §§ 1593(b)(4) and 1594(d) and (e); 21U.S.C.§ 853
28 U.S.C. § 2461(c)
(Forfeiture Allegations)

18 U.S.C. § 1593(b)(2) and (b)(3)
(Mandatory Restitution)

THE GRAND JURY CHARGES:

**INTRODUCTION**

At all times material to this Indictment:

1. Defendants HUONG THI MCREYNOLDS, JOSEPH MINH MCREYNOLDS ("JOSEPH MCREYNOLDS"), and VINCENT MINH MCREYNOLDS ("VINCENT MCREYNOLDS"), working with others known and unknown to the grand jury, operated a scheme in which they caused Vietnamese women, men, and children to work against their will at the "I Do, I Do/Sweet Nothings" wedding boutique located at 401 W. Santa Fe Avenue in Flagstaff, Arizona ("Store"), and at the home located at 3448 S. Litzler Drive, in Flagstaff, Arizona ("McReynolds Residence"), largely unpaid.

2. Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS caused the Vietnamese women, men, and children, including "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." (collectively, "the Workers") once they were in the United States, to work at the Store seven days a week, for up to eleven (11) hours per day. Before and after their daily work at the Store, Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS caused "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." to work at the McReynolds Residence for several additional hours per day.

3. Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS obtained the Vietnamese women, men, and children who worked at the Store and the McReynolds Residence, including but not limited to "L.T.," "M.P.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." through various means, including by causing "S.M.," "K.T.," and "C.D." to enter into marriages for the purpose of evading the immigration laws of the United States.

4. Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES KELBER HARTFUL MCREYNOLDS ("JAMES MCREYNOLDS") each entered into a marriage for the purpose of evading the immigration laws of the United States. Each of the

Vietnamese individuals those defendants married was brought to the United States and caused to work at the Store and the McReynolds Residence, largely unpaid.

5. Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS caused the Workers to continue working, against their will and largely unpaid, at the Store and the McReynolds Residence by means of a scheme, pattern, or plan intended to cause the Workers to believe that if they did not perform the labor and services, the Workers and other persons would suffer serious harm, and by means of the abuse and threatened abuse of law and legal process.

6. Defendant HUONG THI MCREYNOLDS is the mother of defendants JOSEPH MCREYNOLDS and VINCENT MCREYNOLDS. Defendant JAMES MCREYNOLDS is the father of defendants JOSEPH MCREYNOLDS and VINCENT MCREYNOLDS. Defendant HUONG THI MCREYNOLDS was formerly married to defendant JAMES MCREYNOLDS.

7. Defendant HUONG THI MCREYNOLDS is the owner and primary operator of the Store. Defendant JAMES MCREYNOLDS is also a part owner of the store, and assists in the operation of the Store. Defendant VINCENT MCREYNOLDS assists in the operation of the Store. Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES MCREYNOLDS lived at the McReynolds Residence.

8. "L.T.," "K.T.," "S.M.," "L.T.P.," and "J.P." are Vietnamese females who were over the age of eighteen at all times material to this indictment, identified herein by their initials, whose identities are known to the grand jury. "C.D." and "K.P." are Vietnamese males who were over the age of eighteen at all times material to this indictment, identified herein by their initials, whose identities are known to the grand jury. "M.P." and "G.P." are Vietnamese citizen females who were under the age of eighteen at the time they were caused to work in the Store and the McReynolds Residence, identified herein by their initials, whose identities are known to the grand jury.

**COUNT 1**

**(Forced Labor Conspiracy)**
**18 U.S.C. §§ 371 and 1589**

9. The factual allegations in paragraphs 1 - 8 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

10. Beginning on a date unknown to the grand jury, but no than later September 2001, and continuing until December 16, 2008, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, together and with others known and unknown to the grand jury, did willfully and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the grand jury to commit the offense of Forced Labor set forth in 18 U.S.C. § 1589, specifically, to provide and obtain the labor and services of "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." by means of:

(a) a scheme, pattern, and plan intended to cause "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." to believe that if they did not perform such labor or services, they or another person would suffer serious harm in violation of 18 U.S.C. § 1589(2) (2000); and

(b) the abuse and threatened abuse of law and the legal process in violation of 18 U.S.C. § 1589(3) (2000).

**OBJECT OF THE CONSPIRACY**

11. It was the object of the conspiracy to recruit and obtain Vietnamese nationals and compel the unpaid servitude of those nationals in the Store and the McReynolds Residence.

**MANNER AND MEANS OF THE CONSPIRACY**

12. The manner and means employed by defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS to obtain the labor and services of "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." were as follows:

(a) Defendant HUONG THI MCREYNOLDS recruited Vietnamese individuals to come to the United States, arranging marriages between those Vietnamese

individuals and United States citizens. Defendants HUONG THI MCREYNOLDS and JOSEPH MCREYNOLDS caused the Vietnamese individuals to believe that they would be entering legitimate marriages, when instead HUONG THI MCREYNOLDS intended that they would work without pay in the Store and the McReynolds Residence;

(b) Defendant HUONG THI MCREYNOLDS recruited other Vietnamese individuals to work at the Store and the McReynolds Residence by promising to assist them with immigration paperwork;

(c) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS controlled the Workers: (1) by making them live together at the McReynolds Residence; (2) by limiting and monitoring their communication with each other and their family members; (3) by isolating them from the Flagstaff community through preventing them from learning English, preventing their association with other individuals in Flagstaff, and limiting their knowledge of the Flagstaff area; (4) by limiting, monitoring, and otherwise surveiling their movements and use of time, including their travel between the Store and the McReynolds Residence; (5) by verbally reprimanding them if they travelled anywhere except the Store and the McReynolds Residence, or if they took too long to travel between the Store and the McReynolds Residence; and (6) by berating and yelling at the Workers if they attempted to escape.

(d) Defendants HUONG THI MCREYNOLDS and VINCENT MCREYNOLDS, and others known to the grand jury, caused the Workers to perform labor and services at the Store, including but not limited to cleaning the store, arranging the merchandise, polishing shoes, cleaning shirts for rental, and facilitating sales. With few exceptions, defendants HUONG THI MCREYNOLDS and VINCENT MCREYNOLDS did not allow the Workers to leave the store during business hours.

(e) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, caused the Workers to perform labor and services at the McReynolds Residence before and after the Store's business hours, including but not limited to preparing meals for the McReynolds family, washing dishes, cleaning the house, doing laundry, and providing child care. With few exceptions, the Workers were not permitted to leave the McReynolds Residence alone;

(f) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS did not generally pay the Workers for their labor and services at the Store and McReynolds Residence;

(g) Defendant HUONG THI MCREYNOLDS prevented the Workers from escaping from the Store and the McReynolds Residence by seizing their immigration documents;

(h) Defendant HUONG THI MCREYNOLDS created an atmosphere of fear by berating the Workers, threatening to shame their families in Vietnam, and suggesting that she would abandon the workers in unknown locations, including Mexico;

(i) Defendants JOSEPH MCREYNOLDS and VINCENT MCREYNOLDS created an atmosphere of fear by frequently carrying firearms within the McReynolds Residence, yelling at the Workers, threatening to falsely report the Workers' actions to HUONG THI MCREYNOLDS, and using physical violence against other members of the McReynolds family with the Workers were present;

(j) HUONG THI MCREYNOLDS caused the Workers to believe that she was legally knowledgable and would exact legal consequences if they escaped. When Workers did escape from the Store and the McReynolds Residence, HUONG THI MCREYNOLDS falsely reported to the police and immigration authorities that the Workers had victimized herself and others and initiated legal actions against the

Workers.

(k) HUONG THI MCREYNOLDS conducted multiple financial transactions knowing that the monies involved in those financial transactions were, in part, only available because of proceeds she earned while trafficking the Workers, and she used those proceeds to further her ability to continue her business and continue trafficking the Workers.

**OVERT ACTS**

13. In furtherance of the aforesaid conspiracy, and to effect the objects of the conspiracy, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, VINCENT MCREYNOLDS, and other coconspirators unknown to the grand jury, committed, or caused to be committed, overt acts, including but not limited to the following:

(a) Beginning in or about September 2001, and continuing until on or about December 16, 2008, HUONG THI MCREYNOLDS obtained the labor and services of "L.T.," "M.P.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." by ordering them to clean the Store and merchandise, polish shoes, clean shirts, assist customers, arrange merchandise for display, operate the cash register, and cook and clean at the McReynolds Residence. Specifically, HUONG THI MCREYNOLDS obtained the labor and services of: (1) "L.T." from in or about September 2001 to on or about September 23, 2004; (2) "M.P." from in or about June 2002 to on or about October 11, 2004; (3) "K.T." from in or about February 2006 to on or about August 31, 2007; (4) "G.P." from in or about September 2006 to on or about December 16, 2008; (5) "C.D." from in or about April 2008 to in or about November 2008; (6) "L.T.P." from on or about December 20, 2005 to in or about March 2006 and on or about December 6, 2007 to on or about August 30, 2008; (7) "K.P." from in or about June 2002 to in or about October 2004; and (8) "J.P." from in or about June 2002 to on or about September 9, 2004.

(b) Beginning in or about September 2001, and continuing until on or about December 16, 2008, HUONG THI MCREYNOLDS either did not pay the Workers for their labor or services during the time periods that they provided labor and services at the Store and at the

McReynolds Residence, or paid them only nominally. Specifically, HUONG THI MCREYNOLDS: (1) paid "L.T." less than $800 total between September 2001 and September 23, 2004; (2) did not pay "K.T." from February 2006 to January 2007, and paid "K.T." a 2 percent commission on her total sales between February 2007 and August 31, 2007; (3) paid "G.P." $105 total between September 2006 and December 16, 2008; (4) did not pay "C.D." between April 2008 and November 2008; (5) paid "L.T.P." $1 for every five shoes she polished and $1 for every three shirts she cleaned between December 20, 2005 and March 2006, and December 6, 2007 and August 30, 2008; (6) paid "K.P." $1 for every pair of shoes he cleaned and non-monetary "credit" to allow him to attend conventions on behalf of the Store between June 2002 and October 2004; and (7) paid "J.P." approximately $10 for every dress she sold between June 2002 and September 9, 2004.

(c) At times beginning in or about September 2001, and continuing until on or about December 18, 2008, HUONG THI MCREYNOLDS demanded that the Workers provide her with their immigration documents, and then possessed and concealed the documents from the Workers, promising to complete additional documentation that would allow the Workers to live and work in the United States, which she never completed. Specifically, beginning: (1) in or about September 2001, HUONG THI MCREYNOLDS obtained and concealed the immigration documents of "L.T."; (2) in or about February 2006, HUONG THI MCREYNOLDS obtained and concealed the immigration documents of "K.T."; (3) in or about September 2006, HUONG THI MCREYNOLDS obtained and concealed the immigration documents of "G.P."; (4) in or about April 2008, HUONG THI MCREYNOLDS obtained and concealed the immigration documents of "C.D." Further, at sometime between April 2008 and November 2008, HUONG THI MCREYNOLDS obtained and concealed the resident alien card of "C.D."; (5) in or about December 2005, HUONG THI MCREYNOLDS obtained and concealed the passport of "L.T.P."; and (6) in or about October 2004, HUONG THI MCREYNOLDS obtained and concealed the immigration documents of "K.P."

(d) At times beginning in or about September 2001, and continuing until on or about

December 18, 2008, HUONG THI MCREYNOLDS made specific threats based on her continued possession of the immigration documents of the Workers, including threats to discontinue helping them complete additional documentation so that they would be forced to return to Vietnam, and, on or about September 23, 2004, threatening to tear up the immigration documents of "L.T."

(e) At times beginning in or about September 2001, and continuing until on or about December 18, 2008, HUONG THI MCREYNOLDS and JOSEPH MCREYNOLDS monitored the Workers' electronic communications, restricted their ability to communicate with family members, and imposed restrictions on the locations to which the workers could travel. Specifically: (1) at times between September 2001 and on or about September 23, 2004, HUONG THI MCREYNOLDS told "L.T." that she was not permitted to go anywhere except the store and the McReynolds residence, threatening to discontinue any assistance with immigration documentation if "L.T." did not comply; (2) at sometime between February 2006 and on or about August 31, 2007, HUONG THI MCREYNOLDS threatened to abandon "K.T." in an unknown location if "K.T." did not return a cellular telephone she had obtained; (3) at sometime between September 2006 and December 16, 2008, HUONG THI MCREYNOLDS informed "G.P." that "G.P." would not be permitted to use a cellular telephone because "K.T." had used a cellular telephone to facilitate her escape; (4) between September 2006 and December 16, 2008, JOSEPH MCREYNOLDS monitored the electronic communication of "G.P."; and (5) at times between December 20, 2005 and August 30, 2008, HUONG THI MCREYNOLDS refused to allow "L.T.P." to speak to her family members in Vietnam.

(f) At times beginning in or about September 2001, and continuing until on or about December 18, 2008, HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS threatened, and exacted, physical consequences and used verbal abuse against the Workers if they did not comply with the restrictions placed on them. Specifically: (1) on or about August 31, 2007, JOSEPH MCREYNOLDS attempted to physically prevent "K.T." from escaping from the McReynolds Residence; (2) at times between April 2008 and November 2008,

VINCENT MCREYNOLDS threatened to tell HUONG THI MCREYNOLDS that "C.D." was responsible for anything that went wrong at the Store; (3) at times between September 2001 and December 16, 2008, JOSEPH MCREYNOLDS and VINCENT MCREYNOLDS openly carried firearms as they made verbal commands and threatened the workers; (4) at times between September 2001 and December 16, 2008, HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS berated the Workers; and (5) at times between December 20, 2005 and August 30, 2008, HUONG THI MCREYNOLDS yelled at and physically pushed "L.T.P." for attempting to escape and asking to be allowed to return to Vietnam.

(g) At times beginning on or about October 12, 2004, and continuing until on or about December 16, 2008, HUONG THI MCREYNOLDS and VINCENT MCREYNOLDS made threats to use legal process against the Workers if the Workers did not comply with the restrictions placed on them, and did misuse the legal process against the Workers if the Workers did not comply with the restrictions placed on them. Specifically: (1) on or about August 31, 2007, HUONG THI MCREYNOLDS filed, or caused to be filed, an unsubstantiated Flagstaff Police Department report complaining that "K.T." had stolen $2000 and a gold bracelet, and had only married JOSEPH MCREYNOLDS in an attempt to come to the United States; (2) on or about September 25, 2007, HUONG THI MCREYNOLDS filed, or caused to be filed, an unsubstantiated Flagstaff Police Department report complaining that "K.T." had previously engaged in a fraudulent scheme to report other workers' commissions as "K.T.'s" own; (3) in or about December 2008, VINCENT MCREYNOLDS attempted to mislead Flagstaff Police Officers by claiming that "G.P." wanted to go back to Vietnam and would be leaving soon, when in fact, "G.P." was being held against her will at the Store; and (4) on or about December 15, 2008, HUONG THI MCREYNOLDS wrote a letter to immigration authorities requesting the deportation of "C.D." after he had escaped from the McReynolds Residence.

(h) At times beginning on or about February 2004, and continuing until on or about December 16, 2008, HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES

MCREYNOLDS travelled to Vietnam to recruit individuals to marry United States citizens so that after those Vietnamese individuals had obtained their immigration documents, HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS could obtain labor and services of those individuals and their family members. Specifically: (1) in or about February 2004, HUONG THI MCREYNOLDS travelled to Vietnam to recruit "K.T." to marry JOSEPH MCREYNOLDS; (2) in or about December 2004, HUONG THI MCREYNOLDS and JOSEPH MCREYNOLDS travelled to Vietnam in order to attend an engagement ceremony for JOSEPH MCREYNOLDS and "K.T."; and (3) on or about October 19, 2005, HUONG THI MCREYNOLDS travelled to Vietnam in order to marry "C.D." in a Vietnamese ceremony.

(i) At times beginning on or about December 21, 2007 and continuing until on or about August 11, 2008, HUONG THI MCREYNOLDS made payments to Phoenix Christian Unified Schools in Phoenix in an amount totaling $13,560.00 — monies she had in part earned from trafficking the Workers — in an effort to prolong "G.P."'s labor for HUONG THI MCREYNOLDS in Flagstaff and Phoenix, and to conceal the fact that "G.P."'s labor in the Store was not compliant with the student visa that HUONG THI MCREYNOLDS arranged.

(j) At times beginning on or about November 14, 2007 and continuing until on or about December 15, 2008, HUONG THI MCREYNOLDS made mortgage payments to Chase Bank for a home owned by HUONG THI MCREYNOLDS in Phoenix (hereinafter the "Waltann Residence") in an amount totaling $9,171.52 — monies she had in part earned from trafficking the Workers — in an effort to, among other things, keep the Workers in the United States in order to continue to obtain their labor and services.

All in violation of Title 18, United States Code, Sections 371 and 1589.

## COUNT 2

**(Forced Labor)**
**18 U.S.C. §§ 1589 and 2**

14. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

15. Beginning on a date unknown to the grand jury, but no than later September 2001, and continuing until December 16, 2008, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, each aiding and abetting the other, did knowingly provide and obtain the labor and services of "L.T.," "K.T.," "G.P.," and "C.D." by means of:

(a) a scheme, pattern, and plan intended to cause "L.T.," "K.T.," "G.P.," and "C.D." to believe that if they did not perform such labor or services, they or another person would suffer serious harm; and

(b) the abuse and threatened abuse of law and the legal process,

All in violation of Title 18, United States Code, Sections 1589 and 2.

**<u>COUNT 3</u>**

**(Unlawful Conduct With Respect To Documents In Furtherance Of Forced Labor)**
**18 U.S.C. § 1592**

16. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

17. Beginning on on a date unknown to the grand jury, but no than later September 2001, and continuing until December 16, 2008, within the District of Arizona and elsewhere, defendant HUONG THI MCREYNOLDS did knowingly destroy, conceal, remove, confiscate, and possess the actual and purported passports and other immigration documents, and other actual and purported government identification documents of "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," and "K.P." in the course of a violation of 18 U.S.C. § 1589 (Forced Labor), with the intent to violate 18 U.S.C. § 1589 (Forced Labor); and: (1) to prevent and restrict and to attempt to prevent and restrict, without lawful authority, the liberty to move and travel of "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," and "K.P."; and (2) in order to maintain the labor and services of "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," and "K.P.," when "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," and "K.P." were victims of a severe form of trafficking in persons.

All in violation of Title 18, United States Code, Section 1592.

**COUNT 4**

**(Violation Of Fair Labor Standards Act)**
**29 U.S.C. §§ 206, 215 and 216**

18. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

19. Beginning on on a date unknown to the grand jury, but no than later September 2001, and continuing until December 16, 2008, in the District of Arizona and elsewhere, defendant HUONG THI MCREYNOLDS, an employer who employed individuals engaged in commerce and in an enterprise engaged in commerce, committed a violation of 29 U.S.C. § 206 by failing to pay "L.T.," "K.T.," "G.P.," "C.D.," "L.T.P.," "K.P.," and "J.P." wages of not less than $5.15 per hour.

All in violation of Title 29, United States Code, Sections 206, 215 and 216.

**COUNT 5**

**(Marriage Fraud Conspiracy)**
**18 U.S.C. § 371 and 8 U.S.C. § 1325(c)**

20. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

21. Beginning on or about July 2, 2001, and continuing until in or about November 2008, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES MCREYNOLDS did willfully and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the grand jury, to commit the offense of Marriage Fraud in violation of Title 8, United States Code, Section 1325(c), specifically, to enter into, and to aid and abet others to enter into, a marriage for the purpose of evading any provision of the immigration law, to wit, the requirement that "S.M.," "K.T.," and "C.D." be lawfully married to United States citizens, which "S.M.," "K.T.," and "C.D." represented when they applied for United States immigrant visas, in violation of Title 8, United States Code, Section 1325(c).

## OBJECT OF THE CONSPIRACY

22. It was the object of the conspiracy to cause aliens to fraudulently obtain residency status in the United States, so that those aliens could later be used as a source of labor and services at the Store and the McReynolds Residence, by marrying those aliens and by procuring other United States citizens who would agree to marry aliens, and thereby allow the aliens to evade provisions of the immigration laws.

## MANNER AND MEANS OF THE CONSPIRACY

23. The manner and means employed by defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES MCREYNOLDS and other coconspirators known to the grand jury, to effect the object of the conspiracy were as follows:

(a) Defendant HUONG THI MCREYNOLDS arranged marriages for herself and other United States citizens, including JOSEPH MCREYNOLDS, JAMES MCREYNOLDS, and others known and unknown to the grand jury, to Vietnamese citizens living in Vietnam;

(b) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS and JAMES MCREYNOLDS, made telephone calls and trips to Vietnam designed to convince the Vietnamese citizens that they would be entering into lawful marriages;

(c) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS and JAMES MCREYNOLDS, each knowing that they did not intend to enter into a lawful marriage, agreed to enter into marriage with "C.D.," "K.T.," and "S.M."

(d) Defendant HUONG THI MCREYNOLDS then instructed the Vietnamese citizens in how to successfully complete their immigration paperwork and participate in interviews with United States immigration officials in Vietnam;

(e) Defendant HUONG THI MCREYNOLDS then assisted the Vietnamese citizens to travel to the United States;

(f) Defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS and JAMES MCREYNOLDS, then entered into marriages with "C.D.," "K.T.," and "S.M.," despite, throughout that time, continuing to live with and maintain relationships with United States citizens;

(g) Despite being actually married to "C.D." and "S.M.," HUONG THI MCREYNOLDS and JAMES MCREYNOLDS continued to refer to each other as husband and wife.

(h) Despite being engaged and subsequently married to "K.T.," JOSEPH MCREYNOLDS continued to live with, and raise and father children with, a United States citizen whose identity is known to the grand jury.

(i) Defendants HUONG THI MCREYNOLDS and JOSEPH MCREYNOLDS then caused "C.D.," "K.T.," "S.M.," and "S.M.'s" children, "M.P.," "K.P." and "J.P.," to provide labor and services in the Store and the McReynolds Residence.

**OVERT ACTS**

24. In furtherance of the aforesaid conspiracy, and to effect the objects of the conspiracy, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES MCREYNOLDS and other coconspirators known to the grand jury, committed, or caused to be committed, the overt acts set forth in Count One of this Indictment, which are fully incorporated by reference herein. In addition, in furtherance of the aforesaid conspiracy, and to effect the objects of the conspiracy, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and JAMES MCREYNOLDS committed, or caused to be committed, the following overt acts:

(a) On or about July 2, 2001, JAMES MCREYNOLDS filed, or caused to be filed, a Petition for Alien Fiancée in order to bring "S.M." to the United States.

(b) On or about June 7, 2002, JAMES MCREYNOLDS married "S.M." in Las

Vegas, Nevada.

(c) On or about June 24, 2003, JAMES MCREYNOLDS executed, or caused to be executed, an Affidavit of Support Under Section 213A of the [Immigration] Act, sponsoring "S.M.," "M.P.," "K.P.," and "J.P."

(d) On or about April 8, 2005, JOSEPH MCREYNOLDS filed, or caused to be filed, a Petition for Alien Fiancée in order to bring "K.T." to the United States.

(e) Between on or about April 8, 2005, and on or about January 19, 2006, HUONG THI MCREYNOLDS instructed "K.T." on statements to make to United States immigration officials to make her relationship to JOSEPH MCREYNOLDS appear legitimate.

(f) On or about January 6, 2006, JOSEPH MCREYNOLDS produced and supplied documentary materials to United States immigration officials in Vietnam designed to make his relationship to "K.T." appear legitimate.

(g) On or about April 28, 2006, JOSEPH MCREYNOLDS married "K.T." in Phoenix, Arizona.

(h) On or about July 17, 2006, JOSEPH MCREYNOLDS executed, or caused to be executed, an Affidavit of Support Under Section 213A of the [Immigration] Act, sponsoring "K.T."

(i) On or about July 29, 2002, HUONG THI MCREYNOLDS filed, or caused to be filed, a Petition for Alien Fiancée in order to bring "C.D." to the United States.

(j) On or about February 18, 2004, HUONG THI MCREYNOLDS attended an interview with fraud prevention immigration officials in Vietnam in order to make her relationship with "C.D." appear more legitimate.

(k) On or about July 18, 2006, HUONG THI MCREYNOLDS executed, or caused to be executed, an Affidavit of Support Under Section 213A of the [Immigration] Act, sponsoring "C.D."

(l) On or about December 15, 2008, HUONG THI MCREYNOLDS wrote a letter to immigration authorities requesting the deportation of "C.D.," who had escaped from the McReynolds Residence, and reporting that she was a victim of "C.D.'s" "marriage fraud."

All in violation of Title 18 United States Code, Section 371.

**COUNT 6**

**(Forced Labor)**
**18 U.S.C. §§ 1589 and 2**

24. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

25. Beginning on a date unknown to the grand jury, but no later than December 20, 2005, and continuing until on or about August 30, 2008, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, each aiding and abetting the other, did knowingly provide and obtain the labor and services of "L.T.P." by means of:

(a) a scheme, pattern, and plan intended to cause "L.T.P." to believe that if she did not perform such labor or services, they or another person would suffer serious harm; and

(b) the abuse and threatened abuse of law and the legal process,

All in violation of Title 18, United States Code, Sections 1589 and 2.

**COUNT 7**

**(Forced Labor)**
**18 U.S.C. §§ 1589 and 2**

28. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

29. Beginning on a date unknown to the grand jury, but no later than June 4, 2002, and continuing until on or about September 9, 2004, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, each aiding and abetting the other, did knowingly provide and obtain the labor and services of "J.P." by means of:

(a) a scheme, pattern, and plan intended to cause "J.P."to believe that if she did not perform such labor or services, they or another person would suffer serious harm; and

(b) the abuse and threatened abuse of law and the legal process,

All in violation of Title 18, United States Code, Sections 1589 and 2.

**COUNT 8**

**(Forced Labor)**
**18 U.S.C. §§ 1589 and 2**

30. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

31. Beginning on a date unknown to the grand jury, but no later than June 4, 2002, and continuing until in or about October 2004, within the District of Arizona and elsewhere, defendants HUONG THI MCREYNOLDS, JOSEPH MCREYNOLDS, and VINCENT MCREYNOLDS, each aiding and abetting the other, did knowingly provide and obtain the labor and services of "K.P." by means of:

(a) a scheme, pattern, and plan intended to cause "K.P." to believe that if she did not perform such labor or services, they or another person would suffer serious harm; and

(b) the abuse and threatened abuse of law and the legal process,

All in violation of Title 18, United States Code, Sections 1589 and 2.

**COUNTS 9 THROUGH 11**

**(Promotional Money Laundering)**
**18 U.S.C. § 1956(a)(1)(A)(I)**

32. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

33. At times beginning on or about December 21, 2007 and continuing until on or about August 11, 2008, in the District of Arizona, defendant, HUONG THI MCREYNOLDS knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, conducted financial transactions, as set forth in the chart below, which involved the proceeds of specified activity, namely violations of 18 U.S.C. § 1589 (Labor Trafficking) and 18 U.S.C. §§ 371 and 1589 (Forced Labor Conspiracy), as alleged in Counts 1 and 2, and Counts 6 through 8, with the intent to promote the carrying on of those specified unlawful activities, each such instance being a separate Count of this Superseding Indictment, as follows:

| Count | Account | Description | Account | Post Date | Amount | Payee |
|---|---|---|---|---|---|---|
| 9 | 2095 | Check | 2095 | 12/21/07 | $6550.00 | Phoenix Christian |
| 10 | 5771 | Check | 5771 | 05/19/08 | $160.00 | Phoenix Christian |
| 11 | 2095 | Check | 2095 | 08/11/08 | $6850.00 | Phoenix Christian |

## COUNTS 12 THROUGH 20

**(Promotional Money Laundering)**
**18 U.S.C. § 1956(a)(1)(A)(I)**

34. The factual allegations in paragraphs 1 - 13 of the Superseding Indictment are incorporated by reference and re-alleged as though fully set forth herein.

35. At times beginning on or about, November 14, 2007 and continuing until on or about December 15, 2008, in the District of Arizona, defendant, HUONG THI MCREYNOLDS, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, conducted financial transactions, as set forth in the chart below, which involved the proceeds of a specified unlawful activity, namely violations of 18 U.S.C. § 1589 (Labor Trafficking) and 18 U.S.C. §§ 371 and 1589 (Forced Labor Conspiracy), as alleged in Counts 1 and 2, and Counts 6 through 8, with the intent to promote the carrying on of those specified unlawful activities, each such instance being a separate Count of this Superseding Indictment, as follows:

//

//

//

//

//

| CHASE MORTGAGE – WALTANN RESIDENCE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Loan Statements | | | | Bank Statements | | | |
| **Count** | **Post Date** | **Payment** | **Amount** | **Combined** | **Account** | **Transaction** | **Amount** | **Post Date** |
| 12 | 11/14/07<br>11/14/07 | Principal<br>Payment | 279.89<br>896.26 | 1,178.15 | 5771 | W/D | 1,178.15 | 11/14/07 |
| 13 | 1/14/08<br>1/14/08 | Principal<br>Payment | 201.74<br>898.26 | 1,100.00 | 5771 | W/D | 1,100.00 | 1/14/08 |
| 14 | 3/15/08<br>3/15/08 | Principal<br>Payment | 200.00<br>898.26 | 1,098.26 | 5771 | W/D | 1,098.26 | 3/14/08 |
| 15 | 4/14/08<br>4/14/08 | Principal<br>Payment | 452.37<br>898.26 | 1,350.63 | 5771 | W/D | 1,350.63 | 4/14/08 |
| 16 | 5/14/08<br>5/14/08 | Principal<br>Payment | 62.53<br>898.26 | 960.79 | 5771 | W/D | 960.79 | 5/14/08 |
| 17 | 6/14/08 | Payment | 898.26 | | 5771 | Check 1658 | 898.26 | 6/16/08 |
| 18 | 10/14/08 | Payment | 861.81 | | 5771 | W/D | 861.81 | 10/14/08 |
| 19 | 11/13/08 | Payment | 861.81 | | 5771 | Check 1713 | 861.81 | 11/13/08 |
| 20 | 12/15/08 | Payment | 861.81 | | 5771 | W/D | 9,861.81 | 12/15/08 |

## FORFEITURE ALLEGATIONS

36. The factual allegations in paragraphs 1-17 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

37. Pursuant to 18 U.S.C. § 1594 and 28 U.S.C. § 2461(c), as a result of committing one or more of the Forced Labor (18 U.S.C. §§ 1589 and 2) offenses, in Counts 1, 2, 3, 6, 7, and 8, the Court shall order that the defendants so convicted forfeit to the United States, any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations; and any property, real or personal, constituting or derived from , any proceeds that such person obtained, directly or indirectly, as a result of such violation; to wit:

A. A business establishment commonly referred to as "I Do, I Do/Sweet Nothings" wedding boutique located at 401 W. Santa Fe Avenue in Flagstaff, Arizona ("Store"), including all bank accounts, inventory, fixtures, improvements, accounts receivable, investment accounts, and all other assets, together with the real estate more particularly described as:

Lots 1, 2, 3, and 4, block d-1, Townsite of Flagstaff, as shown on the plat thereof recorded in book 1, pages 16-16a, Records of Coconino County Arizona, and all that portion of a tract described in that certain deed from H. L. Russell, Judge of the Superior Court of the State of Arizona, an Ex-officio Trustee of the Townsite of Flagstaff, to the grantee therein, recorded in Coconino County Records in Book 26 of Official Records, page 389, lying easterly of an extension across said property of the westerly line of lot 4, block d-1, Townsite of Flagstaff.

B. A home located at 3448 S. Litzler Drive, in Flagstaff, Arizona ("McReynolds Residence") more particularly described as:

Lot 378, of University Heights, according to the plat of record in the Office of the County Recorder of Coconino County, Arizona, recorded in Case 2, Map 276-276d. Excepting therefrom that portion of lot 378 described as follows:

Beginning at the southwest corner of lot 378, said point being the true Point of Beginning; thence south 81 (degrees) 55' 36" east along the south line of lot 378, a distance of 10.00 feet; thence along a line in a northerly direction to the northwest corner of lot 378; thence south 08 (degrees) 04' 24" west along the line common to lots 377 and 378, a distance of 130.00 Feet to the True Point of Beginning.

38. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 1593(b)(4), 1594(d) and (e) and Title 28, United States Code, Section 2461(c), each defendant shall forfeit substitute property, up to the value of the amount described above, if by any act or omission of a defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

39. All in accordance with Title 21, United States Code, Section 853; and Rule 32.2(a), Federal Rules of Criminal Procedure.

## MANDATORY RESTITUTION

40. The factual allegations in paragraphs 1-17 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

41. Pursuant to 18 U.S.C. § 1593(b)(2), as a result of committing one or more of the Forced Labor (18 U.S.C. §§ 1589 and 2) offenses, in Counts 1, 2, 3, 6, 7, and 8, the Court shall order that the defendants so convicted shall pay the victims the full amount of the victims'

losses, as determined by the Court pursuant to 18 U.S.C. §1593(b)(3).

42. For purposes of Notice, the seven victims identified herein are estimated to be due approximately $455,000 based solely upon the calculations of the value of the victim's labor as guaranteed under the minimum wage and overtime provisions of the Fair Labor Standards Act. (29 U.S.C. § 201 et seq.)

A TRUE BILL

S/
FOREPERSON OF THE GRAND JURY
Date: October 24, 2012

JOHN S. LEONARDO
United States Attorney
District of Arizona

S/
KRISSA M. LANHAM
JOSH PATRICK PARECKI
Assistant U.S. Attorneys